**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

JUDITH RODRIGUEZ,
*on behalf of herself and all others similarly situated*,

|  |  |
|---|---|
| Plaintiff, | Case No.: |
| -against- | **CLASS ACTION COMPLAINT** |
| JUICE BEAUTY, INC. d/b/a JUICE ORGANICS, | JURY TRIAL DEMANDED |
| Defendant. |  |

---

Plaintiff JUDITH RODRIGUEZ ("Plaintiff"), individually and on behalf of all others similarly situated, by her undersigned attorneys, pursuant to this Class Action Complaint against JUICE BEAUTY, INC. d/b/a JUICE ORGANICS ("Defendant"), alleges the following:

## NATURE OF THE ACTION

1. This is a consumer protection class action arising out of Defendant's deceptive practices in the marketing, advertising, and promotion of its "Repairing" line of shampoo, conditioner, and hair mask products. These include:

   a. Repairing Shampoo
   b. Repairing Conditioner
   c. Repairing Shampoo and Conditioner Bundle
   d. Repairing Hair Mask

    e.   Deluxe Repairing Shampoo and Conditioner Travel Size Bundle
    f.   Deluxe Repairing Shampoo Travel Size
    g.   Deluxe Repairing Conditioner Travel Size
    h.   Any other Juice Organics hair care product with "Repairing" claims on the label (collectively, the "Products")[1]

2. Through an extensive, widespread, comprehensive, and uniform nationwide marketing campaign, Defendant represents to consumers that the Products are "repairing"—that is, that they can repair damaged hair.  Below are some representative images of the Products:



---

[1] https://juiceorganics.com/collections/repairing (last viewed 8/25/17)




3.   The Products do not actually repair damaged hair, however, because there are no ingredients in the Products that could do so.  Hair is primarily composed of a family of proteins called keratin.  Because keratin is inorganic, "dead" matter, it cannot be repaired once damaged through heat treatments, daily brushing, and other quotidian acts.  While the Products might

3

create the temporary illusion that the user's hair has been repaired, this is indeed an illusion because nothing in the Product can mend damaged keratin proteins.

4.   As a result of Defendant's misconduct, Defendant was able to sell the Product to thousands of consumers throughout the United States and New York and realize enormous profits it would not otherwise have earned.

5.   Plaintiff RODRIGUEZ was among the victims of Defendant's fraud and brings this action on behalf of herself and all other similarly situated consumers who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product in New York ("the Class").   Plaintiff seeks to end Defendant's dissemination of its false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have been economically harmed by purchasing the Product.

## JURISDICTION AND VENUE

6.   This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed class consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship from Defendant; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, exclusive of interest and costs.

7.   This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant because its Product is advertised, marketed, distributed, and sold throughout New York State. Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State. Defendant is authorized to do business in New York State; and Defendant has sufficient

minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant's activity within New York is substantial and not isolated.

8.   Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Defendant is subject to personal jurisdiction in this District. Plaintiffs purchased Defendant's Product in Queens County.

## PARTIES

*Plaintiff*

9.   Plaintiff JUDITH RODRIGUEZ is, and at all relevant times hereto has been, a citizen of the State of New York and a resident of Queens County.  On March 22, 2017, Plaintiff RODRIGUEZ purchased Defendant's 6.75 fl. oz. Juice Organics Repairing Hair Mask, *see* ¶ 2, from Amazon.com after viewing Defendant's hair repair misrepresentations on the product label and Defendant's website.  The purchase price was $8.24.

10.   Relying on Defendant's "Repairing" misrepresentation, Plaintiff RODRIGUEZ purchased the Product believing it would provide the advertised hair repair benefits, listed on the labeling and Amazon.com. However, the Product did not deliver these benefits after she used it in a standard way.  As a result of her purchase, Plaintiff suffered injury in fact and lost money. Had Plaintiff known the truth about Defendant's misrepresentations, she would not have purchased the Product, or would only have been willing to pay much less for it.  Should Plaintiff RODRIGUEZ encounter the Product in the future, she could not rely on the truthfulness of the

packaging, absent corrective changes to it.  However, Plaintiff RODRIGUEZ would be willing to purchase Defendant's products again if she is assured of the truthfulness of their representations.

*Defendant*

11.    Defendant JUICE BEAUTY, INC. d/b/a JUICE ORGANICS is a corporation organized under the laws of the state of Delaware.  Its headquarters are located at 1500 Cader Ln., #205, Petaluma, CA 94954.  Its address for service of process at Corporations Service Company, 251 Little Falls Drive, Wilmington, DE 19808.  .

12.    Defendant develops, manufactures, distributes, markets, and sells personal care, health and beauty products, including its Repairing line of hair care products, throughout the fifty states and the District of Columbia. The labeling, packaging and advertising for the Product, relied upon by Plaintiff, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein.

## FACTUAL ALLEGATIONS

### Defendant's "Repairing" Claims Are False Because Hair Cannot Be Repaired

13.    While Defendant uniformly communicates to consumers that the Products can repair damaged hair, building this claim into the very name of its product line ("Repairing"), the truth is that damaged hair cannot be repaired.  Hairmomenturm.com, a website dedicated to providing science-based hair care information, explains why:

> Hair unlike skin does not have any cells to regenerate and repair.   Hair grows from **hair follicles** on the scalp.  These hair follicles behave like small organs, composed of tissues, blood cells, and glands among other essential components (see image).  Because these hair follicles are alive, they keep producing new hair, pushing out old hair through the shedding process (Telogen phase).  But hair on the other hand is mainly **Keratin, Protein** fibers. Once the fibers are broken, they

6

cannot fix themselves, and there is no 'ointment' available like for skin to help them recover.[2]

Many of these products have been specially formulated with polymers (many of are protein based) such as hydrolyzed wheat protein, designed to fill the gaps in the hair temporarily. Imagine a cracked surface and putting in some putty just to fill those gaps.  The end result: a smooth surface, that feels repaired and that looks nicer than it was before.[3]

14.     The Products are among these protein-based formulations (soy protein). Accordingly, they can do no more than "fill the gaps in hair temporarily."

15.     This is also the opinion of nationally respected hair care professionals.  Citing Eugene Toye, senior stylist at Rita Hazan Salon in New York, WebMD notes that "[d]ry hair worsens with time because of accumulated abuse," and that the "only real way to get rid of the damage is to cut off damaged hair."[4]  Marc Debolt, Marie Robinson Salon colorist and Wella Professionals Ambassador, explained to the Huffington post: "These masks act like a Band-Aid to smooth and mend frayed ends. The only true remedy for split ends is a haircut appointment."[5] Joanna Vargas of Joanna Vargas Salons in New York and Los Angeles explains:

One of the most common misconceptions about hair is that you can repair it, and bring back that shine and strength.

Hair treatments only appear to repair the damage as they coat the hair shaft, usually with a conditioning agent, making it smooth and shiny.

However, damaged hair cannot be repaired with any kind of hair mask or treatment but only create the appearance of restoration. The reason is that hair is dead once it is outside the hair follicle.[6]

16.     Unlike Defendant, some hair care products manufacturers readily acknowledge that their products cannot repair hair.  Manufacturer Renpure debunks the popular myth that this is

---

[2] http://hairmomentum.com/repair-breakage-and-split-ends-hair-truth-myth/ (last viewed 8/25/17)
[3] http://hairmomentum.com/repair-breakage-and-split-ends-hair-truth-myth/ (last viewed 8/25/17)
[4] http://www.webmd.com/beauty/features/dry-hair#2 (last viewed 8/25/17)
[5] http://www.huffingtonpost.com/2015/01/27/hair-mask-split-ends_n_6531902.html (last viewed 8/25/17)
[6] https://joannavargas.com/can-you-repair-damaged-hair/ (last viewed 8/25/17)

possible: "**Myth:** You can mend split ends with the right product. **Truth:** Once they are split, they are split. Products containing silicone or beeswax can be used to seal ends together, but it is a temporary fix. Keeping your hair properly moisturized will help prevent split ends but once you get them, cutting them off is the only way to get rid of them."[7]  Melissa Baker, spokesperson for Renee Furterer hair care products acknowledges that "[t]here is nothing you can really do to repair damaged hair -- it's all about masking the damage."[8]   And Josh Rosebrook of Josh Rosebrook Skin and Hair Care explains:

> I know what you might be thinking- but there are so many products that promise to repair damaged hair! And yes, there are lots of conditioners, serums, and shampoos that promise permanent reversal for dry hair in need of restoration. It's marketing! Think about this- hair is technically dead and has no nervous system, blood, or cell regeneration. Because hair is not a living tissue with regenerative ability, it cannot heal. You can use oils, conditioners, or hydrolyzed proteins to disguise the issues temporarily but it's akin to using make-up, products improve the appearance but they will wash out and you are back to the original problem.
>
> We need to become educated on the true science of hair and skin so we are not susceptible to and educated by marketing lies, twisted truths and false promises.[9]

17.     This consensus is also confirmed by persons with scientific or medical credentials. *The Natural Haven*, a blog maintained by a Ph.D. in materials science, states that "[t]he only remedy for damaged hair is to cut off the damage and let the hair regrow."[10]  Dr. Zoe D. Draelos, M.D. explains: "One of the most common misconceptions about hair is that it is alive, when in fact hair is nonliving and does not heal itself once it is injured. So once the hair is damaged it cannot heal itself except through new hair growth at the scalp."[11]   Researcher J. Jachowicz summarizes the

---

[7] https://www.renpure.com/fact-or-fiction-the-myths-and-truths-about-hair/ (last viewed 8/25/17)
[8] http://www.webmd.com/beauty/features/the-abcs-of-summer-hair-repair#4 (last viewed 8/25/17)
[9] https://joshrosebrook.com/blogs/news/91363463-you-cant-really-repair-or-heal-damaged-hair (last viewed 8/25/17)
[10] http://www.thenaturalhavenbloom.com/2009/09/can-you-really-repair-damaged-hair.html (last viewed 8/25/17)
[11] http://www.webmd.com/beauty/news/20110207/expert-q-and-a-how-to-prevent-hair-damage#2 (last viewed 8/25/17)

scientific research on the subject in a peer-reviewed journal: "Efforts to restore the original properties of hair after mild degradation or to protect undamaged hair against structural weakening have been numerous but largely unsuccessful."[12]

18.     This scientific consensus aside, the simple fact is that if Defendant's repairing claims were true, the Product could only be lawfully marketed as an FDA-approved drug.  The FDCA defines cosmetics as articles "intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance."  21 U.S.C. § 321(i).  The FDCA defines substances as "drugs" if they are "articles (other than food) intended to affect the structure or any function of the body of man …" 21 U.S.C. § 321(g).  Cosmetics that alter the structure of the skin or other parts of the body are drugs even if they are also cosmetics: "A product intended to be applied to the human body for cleansing, beautifying, promoting attractiveness, or altering the appearance is a cosmetic. If this product claims to accomplish these deeds through physiological activity or by changing the structure of the skin, it is also a drug."[13]

19.     Defendant's hair repair claims go well beyond the FDCA definition of a cosmetic and promise to "affect the structure or any function of the body of man," because this would be the only way to actually repair hair.  Thus, Defendant cannot argue that the Product can repair hair without also arguing that it is unlawfully marketing a drug as a non-drug cosmetic.

**Defendant's Deception Would Mislead, Be Material To, And Be Relied Upon By, A Reasonable Consumer**

20.     Defendant's hair repair misrepresentation would be material to a reasonable consumer because users of hair care products are concerned to remedy damaged hair and will

---

[12] J. Jachowicz, *Hair damage and attempts to its repair*, J. Soc. Cosmet. Chem., 38, 263-286 (July/August 1987), pg. 283. (last viewed 8/25/17)
[13] Food and Drug Administration Cosmetic Labeling Guide, http://www.fda.gov/Cosmetics/LabeiingiRegulations/ucmI26444.htm#clga (Last accessed 8/14/17).

therefore be attracted to any product that promises to actually repair it.  GNPD Mintel reports that nearly 30% of hair care products in 2014 made claims concerning damaged hair.  Launches of products claiming to treat damaged hair increased by 24% between 2010 and 2015, by contrast with only a 13% increase in hair care launches overall.[14]  Nielson reports that 25% of product offerings for the top 10 brands of shampoo and conditioner claim hair repair as a primary or secondary benefit.[15]

21.    Plaintiff relied on, and a reasonable consumer would rely on, Defendant's deceptive misrepresentation.  Consumer product companies intend for consumers to rely upon their representations, and reasonable consumers do in fact so rely on them. These representations are the only source of information consumers can use to make decisions concerning whether to buy and use such products. Consumers lack the ability to test or independently ascertain the efficacy and genuineness of product claims of normal everyday consumer products, especially at the point of sale. Reasonable customers must and do rely on the company to honestly report the nature of a product.

22.    A reasonable consumer would be deceived by Defendant's "Repairing" misrepresentation because the notion that hair can be repaired is already a widespread misconception.  Accordingly, reasonable consumers are likely to believe a company claiming that its products can repair hair.

23.    This is confirmed by professionals who are intimately acquainted with ordinary consumer expectations regarding what hair care products can and cannot do.  Thus, salon owner Johanna Vargas observes above that "[o]ne of the most common misconceptions about hair is that you can repair it." ¶ 15.  Likewise, former stylist and hair products company founder Josh

---

[14] http://crodaincmktg.com/2015/F15_Eseminars/HairDamage/TheScienceBehindHairDamageRepair.pdf (last viewed 8/25/17)
[15] http://crodaincmktg.com/2015/F15_Eseminars/HairDamage/TheScienceBehindHairDamageRepair.pdf (last viewed 8/25/17)

Rosebrook recognizes that most consumers do not know that hair cannot be repaired when he writes: "I know what you might be thinking- but there are so many products that promise to repair damaged hair!" ¶ 16.   And Dr. Zoe D. Draelos notes that "[o]ne of the most common misconceptions about hair is that it is alive." ¶ 17.   Given that Defendant's hair repair misrepresentation reinforce a popular myth that many people already have, there is every reason to believe that it is likely to deceive a reasonable consumer.

24.     Defendant might argue that a reasonable consumer does not interpret "Repairing" as literally as does Plaintiff.  It might argue that the term is not intended to suggest that the Product will actually restore hair to its original undamaged state and is rather intended to advertise some lesser, more modest benefit, like strengthening hair, improving its appearance, or preventing future damage. This defense is implausible for several reasons, however.

25.     First, Plaintiff's understanding of "Repairing" is fully in line with ordinary usage.  The Miriam-Webster Dictionary defines "repair" as "putting together what is torn or broken" or "to restore to a sound or healthy state."[16]  Defendant's "Repairing" misrepresentation is deceptive by this definition, since the Product does not restore hair to the condition it was in prior to being damaged. Nor does the Product "put[] together what is torn or broken," because split-ends remain split even after the application of the Product.  One would not say that a piece of paper that was torn in two and then taped back together has been "repaired," and the Product delivers nothing more than this when it comes to hair.

26.     Second, Plaintiff's understanding of "Repairing" is fully in line with the usage of hair care professionals.  *See* ¶¶   13, 15, 16.  These professionals would not be going out of their way to correct the misconception that hair can be repaired if most hair care product users understood

---

[16] https://www.merriam-webster.com/dictionary/repair (last viewed 8/25/17)

"repair" as referring to some amorphous improvement in the look or feel of hair rather than the specific promise that hair will be restored to its original undamaged state.

27.     Third, Defendant itself undermines this defense when it claims that its "Repairing" line of hair care products "repairs, strengthens, and nourishes" hair.  This claim is made on the labels of Repairing shampoos and conditioners, *see* ¶ 2, as well as on the webpage that introduces all of the Repairing Products (including the hair mask purchased by Plaintiff RODRIGUEZ):

Repairing



**REPAIR, STRENGTHEN & NOURISH**

FOR DRY OR DAMAGED HAIR
• Enhances shine and helps strengthen with coconut extract and soy proteins
• Hydrates and nourishes with aloe juice and cucumber
• Conditions and helps restore with jojoba and argan oils

https://juiceorganics.com/collections/repairing (last viewed 8/25/17)

28.     The claim that the Products "repair, strengthen, & nourish" undercuts any suggestion that "repair" really means something like "strengthen" or "nourish," because Defendant's inclusion of these promised benefits on its labelling and advertising would then be redundant.   Their inclusion therefore establishes that "repair" means something <u>stronger</u> than "strengthen" or "nourish."  This is confirmed by the third bullet point above, where it is claimed that the Product will "restore" hair, which Miriam-Webster defines as "to bring back to or put back into a former or original state."[17]

---

[17] https://www.merriam-webster.com/dictionary/restore (last viewed 8/25/17)

This is precisely how Plaintiff RODRIGUEZ and the reasonable consumer understood Defendant's "Repairing" claims.  Defendant cannot argue that this interpretation is unreasonable or idiosyncratic when it endorses the same interpretation on its website and labeling.

29.     The small print elsewhere on the Product label soft pedals the Product's promised "Repairing" benefit.   For example, the small print on the hair mask purchased by Plaintiff RODRIGUEZ promises "Achieve **stronger**, **hydrated** hair that is **less prone to breakage** with this repairing blend of strengthening coconut oil and soy protein…"   This confirms that Defendant's "repairing" claims do not really mean what reasonable consumers understand them to mean.  To repair is to restore to a previously undamaged state, and this is something completely different from strengthening hair, hydrating hair, or reducing the likelihood of future damage.

30.     Moreover, Defendant's small print description of the Products' capabilities does nothing to correct the impression created by the very name of its Product line—"Repairing"—which is placed prominently on the front of the labels.  Given that the listed benefits have nothing to do with repairing as ordinarily understood by the reasonable consumer, Defendant's statements here can at best sow consumer confusion.  *See Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *49 (E.D.N.Y. Sep. 22, 2015) ("the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement."); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG) (RML), 2014 U.S. Dist. LEXIS 135758, at *24 (E.D.N.Y. Sep. 23, 2014) ("[a] solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures.") (quoting *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006)); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464

(E.D.N.Y. 2013) (a disclaimer stating the product is not intended to treat any disease does not eliminate "the possibility of a reasonable consumer being misled.").

**Plaintiff and the Class Were Injured As A Result of Defendant's Deceptive Conduct**

31.     Plaintiff and the Class suffered economic injury in that Plaintiff and Class Members did not receive the benefit of their bargain as purchasers of the Product, which were represented as capable of repairing hair but could not deliver the benefits advertised by Defendant.

32.     Defendant's choice of product line name—"Repairing"—along with the increasing prevalence of repairing claims by hair products generally, *see* ¶ 18, establishes that a product that is capable of repairing hair has greater value than a product that is incapable of doing so.  This is also attested to by the statements of hair care professionals, which reveal the premium value that consumers attach to the ability to repair hair.  *See* ¶¶ 15, 16.  These professionals recognize that consumers see hair repair as a way to avoid haircut appointments they would prefer not to make.

33.     Given that the value of the Product as it actually functions is less than the value of the Product as warranted by Defendant, Plaintiff RODRIGUEZ and the Class have been injured in an amount equal to the difference between the two—either the entire purchase price or some other sum, to be determined by expert analysis at trial.

34.     *See Singleton v. Fifth Generation, Inc*., No. 15-CV-474, 2016 U.S. Dist. LEXIS 14000, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under § 349 where he alleged that, had he "known 'the truth," he "would not have bought the vodka, or would have paid less for it."); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) ("Plaintiffs claim that they paid price premiums specifically "based on Defendants' misrepresentations," and allege that they deserve damages in the amount of either the purchase

prices, or the price premiums, that they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349, and thus also DENIES Defendants' motion to dismiss for that reason."); *Lazaroff v. Paraco Gas Corp.*, 967 N.Y.S.2d 867, 867 (Sup. Ct.). ("Additionally, the court finds that the plaintiff has adequately alleged an injury as a result of the defendants' conduct. Plaintiff alleges that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain, i.e., a full 20 pound cylinder and the amount of propane he was promised…Thus, plaintiff has properly alleged injury. Accordingly, the court finds that the plaintiff has stated a claim for a violation of GBL § 349.")

35.    Additionally, Plaintiff RODRIGUEZ and the Class paid a price premium for the Product because Defendant's deceptive misrepresentation allowed it to charge a higher price than would have been possible had its representations been truthful.  This is confirmed by comparing the price of the Product with the prices of other hair masks also available through Amazon.com that do not make false and deceptive "Repairing" representations:

| PRODUCT | PRICE | FL. OZ. | PRICE/FL. OZ. |
|---|---|---|---|
| Juice Organics Repairing Hair Mask | $8.24 | 6.75 | $1.22 |
| Eva NYC Therapy Sessions Hair Mask | $11.39 | 16.9 | $0.67 |
| Garnier Whole Blends Hair Mask with Avocado Oil & Shea Butter Extracts | $5.47 | 11.1 | $0.54 |
| L'Oreal Paris Hair Expert Extraordinary Oil Curls Re-Nourish Mask | $4.49 | 8.5 | $0.53 |

36.     *See Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.' (Compl. ¶ 9.) Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Rodriguez v. It's Just Lunch, Int'l*, 2010 U.S. Dist. LEXIS 16622, 2010 WL 685009,  at *9 (S.D.N.Y. Feb. 23, 2010) ("[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have not suffered an injury cognizable under NYGBL § 349," but allegations that the plaintiff paid a price premium based upon deceptive practices are sufficient to state an injury).

**Defendant Knew That Its Misrepresentations Were False and Intended that Plaintiff and the Class Rely on Them**

37.     While much of the general public mistakenly believes that hair is alive and can be repaired, anyone involved in the hair care industry is familiar with what hair is and how it works. They therefore know that hair cannot be repaired.   Since Defendant understood this but nevertheless disseminated its "Repairing" misrepresentation, this misrepresentation was knowing and intentional.

38.     Given that Defendant's "Repairing" misrepresentation is built into the very name of the product line, Defendant intended that consumers rely upon it, as it would not otherwise have been so centrally placed.

## CLASS ACTION ALLEGATIONS

39.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff RODRIGUEZ

brings this action against Defendant individually and on behalf of the following persons:

> All persons or entities that purchased the Product for personal use
> and not resale in New York and/or such subclasses as the Court
> deems appropriated. Excluded are Defendant's current and former
> officers, directors, and employees, and the judicial officer to whom
> this case is assigned.  ("the Class")

40.     Plaintiff reserves the right to revise the Class definitions based on facts learned in

the course of litigating this matter.

41.     ***Numerosity***. While the exact number and identities of purchasers of the Product are

unknown to Plaintiff at this time, Plaintiff is informed and believes that the Class contains

thousands of purchasers who are so numerous that individual joinder of all Class members is

impracticable.

42.     ***Existence and Predominance of Common Questions of Law and Fact***. Questions

of law and fact arise from Defendant's conduct described herein. Such questions are common to

all Class members and predominate over any questions affecting only individual Class members.

They questions include:

a.     Whether Defendant's "Repairing" representations are false and misleading and

likely to deceive a reasonable consumer;

b.     Whether Defendant's marketing and advertising of the Products is false,

fraudulent, deceptive, unlawful or misleading;

c.     Whether Defendant has breached warranties made to the consuming public about

its Product;

17

d.  Whether Defendant's marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to consumer law violations in all relevant jurisdictions;

e.  Whether Plaintiff and members of the Class sustained monetary loss and the proper measure of loss;

f.  Whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Class;

g.  Whether Plaintiffs and other members of the Class are entitled to other appropriate remedies, including corrective advertising and injunctive relief; and

h.  Whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or its ratio to the actual or potential harm to the Class.

43.  ***Typicality***. Plaintiff's claims are typical of those of the Class members because, *inter alia*, Plaintiff and the other Class members were all injured by the same uniform conduct, as detailed herein, and were subject to Defendant's hair repair claims that accompanied each and every Product that Defendant sold. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

44.  ***Adequacy of Representation***. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in prosecuting nationwide consumer class actions. Plaintiff understand the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiff

nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class.

45.   **Superiority**. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by any individual Class member is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.   Thus, it would not be economically feasible for an individual class member to prosecute a separate action on an individual basis, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will prevent the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

46.   The prerequisites to maintaining a class action for equitable relief pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

47.    Plaintiff seeks preliminary and permanent equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.

48.   Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought individually and on behalf of the Class)**

49.    Plaintiff RODRIGUEZ realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

50.    Plaintiff RODRIGUEZ brings this claim on behalf of herself and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

51.    NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

52.    To establish a claim under NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

53.    Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin the unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

20

54.   The practices employed by Defendant, whereby Defendant labeled and marketed the Products as capable of repairing hair were unfair, deceptive, and misleading to Plaintiff and other Class members and in violation of NY GBL § 349.

55.   The foregoing deceptive acts and practices were directed at consumers.

56.   Defendant's actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing Defendant's Product.

57.   Plaintiff RODRIGUEZ and other Class members seek to enjoin such unlawful, deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless the unlawful, deceptive actions of Defendant are enjoined, because Defendant will continue to falsely and misleadingly promote the Products as capable of repairing hair.  Plaintiff RODRIGUEZ and Class members seek declaratory relief and injunctive relief in the form of an Order compelling Defendant to cease marketing the Products as "Repairing."

## COUNT II

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought individually and on behalf of the Class)**

58.   Plaintiff RODRIGUEZ realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

59.   Plaintiff RODRIGUEZ brings this claim individually and on behalf of the Class for violations of NY GBL § 349.

60.   Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in her own name to enjoin such unlawful act or practice, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its

discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

61.   By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by promoting the Products as capable of repairing hair, thereby violating NY GBL § 349 and depriving Plaintiff RODRIGUEZ and the Class of the benefit of their bargain and charging a price premium.

62.   The foregoing deceptive acts and practices were directed at consumers.

63.   Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

64.   Plaintiff RODRIGUEZ and the other Class members were injured in fact and lost money as a result of Defendant's deceptive and unfair trade practices.  In order for Plaintiff and Class members to be made whole, they must receive either (1) the price premium they paid, (2) a refund of the purchase price, or (3) the difference between the purchase price and the actual value of the Product, to be determined by expert analysis at trial, as well as punitive damages, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs, and other relief allowable under NY GBL § 349.

**COUNT III**

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
(FALSE ADVERTISING LAW)**

**(brought individually and on behalf of the Class)**

65.    Plaintiff RODRIGUEZ realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

66.    Plaintiff RODRIGUEZ brings this claim individually, as well as on behalf of members of the class, for violations of NY GBL § 350.

67.    Defendants have been and/or are engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

68.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

69.    Defendant caused to be made or disseminated throughout New York, through advertising, marketing and other publications, statements that were untrue or misleading.

70.    Defendant's affirmative misrepresentations as alleged herein were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were, and continue to be, exposed to Defendant's material misrepresentations.

71.    Defendant has violated N.Y. Gen. Bus. Law § 350 because its "Repairing" misrepresentation was material to and likely to deceive a reasonable consumer.

72.    Plaintiff RODRIGUEZ and members of the Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In

purchasing the Products, Plaintiff and members of the Class relied on the misrepresentation that the Products repaired hair.  This misrepresentations were false and/or misleading because hair cannot be repaired.

73.   Plaintiff RODRIGUEZ and members of the Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

74.   Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff RODRIGUEZ and members of the Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a (1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT VI

## COMMON LAW FRAUD

### (brought individually and on behalf of the Class)

75.   Plaintiff RODRIGUEZ realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

76.   Defendant intentionally made materially false and misleading representations regarding the Products' capabilities.

77.   Plaintiff and members of the Class reasonably relied on Defendant's false and misleading representations and did not know the truth that the Products cannot repair damaged hair.   Defendants knew and intended that Plaintiff and the Class would rely on its misrepresentations.

78.   Plaintiff and members of the Class have been injured as a result of Defendant's fraudulent conduct.

79.  Defendant is liable to Plaintiff and members of the Class for damages sustained as a result of its fraudulent conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, seek judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action and appointing Plaintiff as representative of the Class;

b.  An Order appointing the undersigned attorneys as class counsel in this action;

c.  Awarding restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to Plaintiff and the proposed Class members;

d.  Awarding declaratory  relief as permitted by law or equity, including: directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money they are required to pay;

e.  Statutory pre-judgment and post-judgment interest on any amounts;

f.  Awarding attorneys' fees and costs; and

g.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and the Class, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: September 1, 2017

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: _/s/ C.K. Lee_____
     C.K. Lee, Esq.

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
_Attorneys for Plaintiff and the Class_